UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

SABRINA PARR                                         Case No. 1:13-cv-31

    Plaintiff,                                      Barrett, J.
                                                     Bowman, M.J.
vs.

CAROLYN W. COLVIN, acting
COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

## REPORT AND RECOMMENDATION

Plaintiff Sabrina Parr filed this Social Security appeal in order to challenge the Defendant's determination that she is not disabled.  See 42 U.S.C. § 405(g).  Proceeding through counsel, Plaintiff presents three claims of error, all of which the Defendant disputes.  As explained below, I conclude that the ALJ's finding of non-disability should be REVERSED and REMANDED because it is not supported by substantial evidence in the administrative record.

**I. Summary of Administrative Record**

On June 16, 2009, Plaintiff protectively filed an application for a period of disability and disability insurance benefits (DIB) and on December 21, 2009, filed an application for Supplemental Security Income (SSI) alleging she became disabled on December 5, 2007 (Tr. 157-67)  based upon mental impairments.  (Tr. 157-67).  Plaintiff was last insured for DIB on September 30, 2011.  (Tr. 217).  After Plaintiff's application was denied initially and upon reconsideration, she requested a hearing de novo before an Administrative Law Judge ("ALJ").  An evidentiary hearing was held in November 2011, at which Plaintiff was

represented by counsel. At the hearing, ALJ Kristen King heard testimony from Plaintiff and impartial vocational expert Vanessa Harris. On December 9, 2011, the ALJ denied Plaintiff's application in a written decision. Plaintiff now seeks judicial review of that decision.

The record reflects that Plaintiff was 31 years old at the time of the ALJ's decision and had an associate's degree in criminal justice. She previously worked as a child day care worker and a server. She last worked in 2008. Plaintiff alleges disability based upon depression, bipolar disorder, post traumatic stress disorder, mood disorder and panic disorder with agoraphobia. Plaintiff was sexually abused for years as a child and also has a history of polysubstance abuse, including IV heroin use. Recent records indicate that Plaintiff has been prescribed Ability, Effexor, Wellbutrin and Clonazpan in an effort to stabilize her mental impairments.

Based upon the record and testimony presented at the hearing, the ALJ found that Plaintiff has the following severe impairments: "bipolar disorder; posttraumatic stress disorder; mood disorder; and history of polysubstance abuse, reportedly in remission." (Tr. 19). The ALJ determined that none of Plaintiff's impairments alone, or in combination, met or medically equaled one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. *(Id.)*. Rather, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to perform a full range of work with the following nonexertional limitations:

> no exposure to unprotected heights; limited to simple, routine, repetitive tasks; occasional interaction with the public, but no transactional interaction, such as sales or negotiations; occasional interaction with coworkers and supervisors; and limited to low stress work, which is defined as no more than occasional changes in the work setting and no dealing with customer complaints or emergency service tasks.

(Tr. 22). Based upon the record as a whole, and given Plaintiff's age, education, work experience, and RFC, the ALJ concluded that while Plaintiff is unable to perform her past relevant work, other jobs existed in significant numbers in the national economy that Plaintiff could perform. (Tr. 29, 30). Such jobs include hand packager, machine packager and cleaner. (Tr. 30). Accordingly, the ALJ determined that Plaintiff was not under disability, as defined in the Social Security Regulations and is therefore not entitled to DIB and/or SSI. (Tr. 31).

The Appeals Council denied Plaintiff's request for review. Therefore, the ALJ's decision stands as the Defendant's final determination. On appeal to this Court, Plaintiff argues that the ALJ erred by: (1) improperly weighing and evaluating the opinion evidence; (2) improperly evaluating Plaintiff's credibility; and (3) failing to pose a valid hypothetical question to the vocational expert. Upon close inspection, the undersigned finds that the ALJ improperly evaluated the opinion evidence, thereby requiring remand.

**II. Analysis**

**A. Judicial Standard of Review**

To be eligible for DIB or SSI benefits, a claimant must be under a "disability" within the definition of the Social Security Act. *See* 42 U.S.C. § 1382c(a). Narrowed to its statutory meaning, a "disability" includes only physical or mental impairments that are both "medically determinable" and severe enough to prevent the applicant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies. *See Bowen v. City of New York*, 476 U.S. 467, 469 (1986).

When a court is asked to review the Commissioner's denial of benefits, the court's

3

first inquiry is to determine whether the ALJ's non-disability finding is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (additional citation and internal quotation omitted). In conducting this review, the court should consider the record as a whole. *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir.1978). If substantial evidence supports the ALJ's denial of benefits, then that finding must be affirmed, even if substantial evidence also exists in the record to support a finding of disability. *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir.1994). As the Sixth Circuit has explained:

> The Secretary's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion .... The substantial evidence standard presupposes that there is a "zone of choice" within which the Secretary may proceed without interference from the courts. If the Secretary's decision is supported by substantial evidence, a reviewing court must affirm.

*Id.* (citations omitted).

In considering an application for benefits, the Social Security Agency is guided by the following sequential benefits analysis: at Step 1, the Commissioner asks if the claimant is still performing substantial gainful activity; at Step 2, the Commissioner determines if one or more of the claimant's impairments are "severe:" at Step 3, the Commissioner analyzes whether the claimant's impairments, singly or in combination, meet or equal a Listing in the Listing of Impairments; at Step 4, the Commissioner determines whether or not the claimant can still perform his or her past relevant work; and finally, at Step 5, if it is established that claimant can no longer perform his or her past relevant work, the burden of proof shifts to the agency to determine whether a significant number of other jobs which

4

the claimant can perform exist in the national economy. *See Combs v. Commissioner of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006); 20 C.F.R. § 404.1520, 416.920.

A plaintiff bears the ultimate burden to prove by sufficient evidence that he or she is entitled to disability benefits. 20 C.F.R. § 404.1512(a). A claimant seeking benefits must present sufficient evidence to show that, during the relevant time period, he or she suffered an impairment, or combination of impairments, expected to last at least twelve months, that left him or her unable to perform any job in the national economy. 42 U.S.C. § 423(d)(1)(A).

**B. The ALJ's evaluation of the opinion evidence is not substantially supported.**

Plaintiff's first assignment of error asserts that the ALJ improperly weighed the medical opinion evidence. Specifically, Plaintiff asserts the ALJ erred in giving controlling weight to the opinions of the non-examining state agency psychologists, instead of giving deference to the opinions of Plaintiff's treating psychiatrist, Dr. Gray. Plaintiff further asserts that the ALJ erred in giving limited weight to the findings of the consultative examiners Dr. Spadafora and Schmidtgoessling. Plaintiff's assertions are well taken.

*1. Summary of Opinion Evidence*

In January 2009, Plaintiff underwent a psychological consultative examination by Dr. Spadafora. (Tr. 28, 435-43). Dr. Spadafora opined that Plaintiff's ability to relate to others was moderately impaired, due to her reports of anxiety in large crowds of people and people she is not acquainted, as well as not wanting to go into a rehabilitation program due to anxiety. (Tr. 28, 441). Dr. Spadafora also opined that Plaintiff's ability to understand, remember and follow instructions was not impaired; her ability to maintain attention,

5

concentration and persistence was moderately impaired; and her ability to withstand stress and pressures associated with day-to-day activities was markedly impaired due to a panic disorder, panic attacks, and posttraumatic stress disorder. (Tr. 28, 441).

Dr. Schmidtgoessling consultatively examined Plaintiff in May 2010. (Tr. 28, 474-81). Dr. Schmidtgoessling opined that Plaintiff was not impaired in her ability to understand, remember and follow instructions; she is moderately impaired in her ability to maintain attention and concentration, persistence and pace to perform simple, repetitive tasks; she is markedly impaired in her ability to relate to others, including coworkers and supervisors; and she is markedly impaired in her ability to tolerate the normal stress and pressures of day-to-day work activity. (Tr. 28, 479).

In June 2010, Dr. Lewin, a state agency psychological consultant, reviewed the record and opined that Plaintiff remains able to handle instructions of all types; she was superficially cooperative but may irritate others at times with whining complaints, and reduced attendance; She did not mention any problems with customers on last two jobs so presumably would be able to deal with the public again; her recall was intact as was her concentration, when tested; she may not always finish what she starts; and she could function in a low stress setting but not a high one, like dealing with complaints or emergency services tasks. (Tr. 499). Dr. Lewin noted that Plaintiff's allegations of little socialization were not consistent with the record, including her ability to take the bus, working with a neighbor, and socializing with the father of her newborn baby. Dr. Lewin further opined that Dr. Schmidtgoessling's finding that Plaintiff would be markedly impaired in relating, coping with stress and moderately impaired in concentration should only be given partial weight, as Plaintiff is stressed by having three young children, she socializes

6

and appears to have exaggerated problems with neighbors and lack of friends. (Tr. 498-99).

In July 2010, Dr. Gray completed a medical source statement/residual functional capacity. (Tr. 28, 500-02). Dr. Gray opined that Plaintiff had an extreme loss in her ability to maintain attention and concentration for extended periods of two hour segments; in her ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and perform at a consistent pace without an unreasonable number and length of rest periods, which requirements are usually strict; in her ability to respond appropriately to criticism from supervisors; in her ability to get along with co-workers or peers without (unduly) distracting them or exhibiting behavioral variances; and in her ability to respond appropriately in a routine work setting. (Tr. 28, 501). Dr. Gray reported that Plaintiff had frequent panic attacks and agoraphobia, which limited her ability to function in social and work settings. (Tr. 28, 502). Dr. Gray reported that she believed Plaintiff was currently unable to work and meets criteria for disability based on the diagnosis of bipolar disorder. (Tr. 28, 502).

In November 2010, Dr. Hoyle, another state agency non examining psychologist, reviewed the record and affirmed Dr. Lewin's assessment and opinions. (Tr. 503). Dr. Hoyle further opined that the opinions and extreme ratings by Dr. Gray on July 21, 2010 were not supported. *Id.*

In his evaluation of the opinion evidence, the ALJ gave "significant weight" to the opinions of the non-examining state agency psychologists Dr. Lewin and Dr. Hoyle, because she found that their assessments "are generally consistent with the substantial medical evidence of record and supported by the clinical signs and findings. The ALJ also

noted that Dr. Lewin and Dr. Hoyle had the opportunity to review the longitudinal treatment record.

The ALJ gave limited weight to the findings of Dr. Spadafora and Dr. Schmidtgoessling. With respect to Dr. Spadafora, the ALJ noted that her opinion that Plaintiff had marked limitations in withstanding stress and pressure associated with day to day activities is inconsistent with the substantial evidence of record and not supported by clinical signs and findings reported by physicians and examiners. Similarly, the ALJ found that Dr. Schmidtgoessling's assessment that Plaintiff had marked impairments in social functioning and tolerating stress and pressures of work activity were not supported by the substantial medical evidence of record. The ALJ also found that Dr. Schmidtgoessling's finding of marked impairments was "based heavily upon the claimant's self reports which. . . are not fully credible." (Tr. 28).

The ALJ gave "little weight" to the limitations assigned by Dr. Gray. The ALJ found that they were not well supported by the evidence and not consistent with the doctor's treatment notes. The ALJ further determined that Plaintiff's alleged disabling panic attacks and agoraphobia are not consistent with, or supported by, the medical evidence of record.

2. *Applicable Law and Analysis*

In evaluating the opinion evidence the ALJ must consider the factors set forth in 20 C.F.R. § 404.1527(d)(2). These factors include: "(1) the length of the treatment relationship and the frequency of the examination; (2) the nature and extent of the treatment relationship; (3) the supportability of the opinion, with respect to relevant evidence such as medical signs and laboratory findings; (4) the consistency of the opinion with the record as a whole; (5) the specialization of the physician rendering the opinion; and (6) any other

8

factor raised by the applicant." *Meece v. Barnhart*, 192 Fed. Appx. 456, 461 (6th Cir. 2006) (citing 20 C.F.R. §§ 404.1527(d)(2)-(d)(6)).

It is well established that the "[t]he ALJ 'must' give a treating source opinion controlling weight if the treating source opinion is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques' and is 'not inconsistent with the other substantial evidence in [the] case record.' " *Blakley v. Commissioner Of Social Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Wilson v. Commissioner*, 378 F.3d 541, 544 (6th Cir. 2004). A finding by the ALJ that a treating physician's opinion is not consistent with the other substantial evidence in the case record "means only that the opinion is not entitled to 'controlling weight,' *not that the opinion should be rejected*." Soc. Sec. Rul. 96-2p, 1996 WL 374188, at *4 (emphasis added). "Treating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527 and 416.927." *Blakley*, 581 F.3d at 408. These factors include the length, nature and extent of the treatment relationship and the frequency of examination. 20 C.F.R. § 404.1527(d)(2)(i)(ii); 416.927(d)(2)(i)(ii); *Wilson*, 378 F.3d at 544. In addition, the ALJ must consider the medical specialty of the source, how well-supported by evidence the opinion is, how consistent the opinion is with the record as a whole, and other factors which tend to support or contradict the opinion. 20 C.F.R. §§ 404.1527(d)(3)-(6), 416.927(d)(3)-(6); *Wilson v. Commissioner,* 378 F.3d 541, 544 (6th Cir. 2004).

The ALJ must satisfy the clear procedural requirement of giving "good reasons" for the weight accorded to a treating physician's opinion: "[A] decision denying benefits 'must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make

9

clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.' Social Security Ruling 96-2p, 1996 WL 374188, at *5 (1996)." *Wilson,* 378 F.3d at 544. The specific reasons requirement exists not only to enable claimants to understand the disposition of their cases, but to ensure "that the ALJ applies the treating physician rule and permit[] meaningful review of the ALJ's application of the rule." *Id.* Only where a treating doctor's opinion "is so patently deficient that the Commissioner could not possibly credit it" will the ALJ's failure to observe the requirements for assessing weight to a treating physician not warrant a reversal. *Id.* at 547. Here, the ALJ's evaluation of the opinion evidence does not reflect an analysis of these factors.

As detailed above, the ALJ determined that the opinions of the non-examining state agency review psychologists (Dr. Lewin and Dr. Hoyle) were entitled to more weight than that of Dr. Gray, Plaintiff's treating psychiatrist, because their opinions were "generally consistent with the substantial medical evidence of record and supported by the clinical signs and findings" and they "had an opportunity to review the longitudinal treatment record and assess the consistency of the claimants allegations and complaints." (Tr. 28). The ALJ discounted Dr. Gray's findings because she believed they were not well supported and were inconsistent with her treatment notes. The ALJ also noted that Plaintiff's alleged panic attacks were not consistent with or supported by the medical evidence of record. Such findings, however, improperly characterize Dr. Gray's treatment notes and Plaintiff's statements; and also fail to properly apply agency regulations.

First, the record indicates that Plaintiff began receiving mental health treatment at Central Clinic in November 2009 where she was seen primarily by Dr. Gray. The treatment

10

notes from Central Clinic contain ample objective evidence[1] and clinical findings relating to Plaintiff's mental impairments. These include clinical findings such as labile mood, mood swings, panicked mood, psychomotor retardation, decreased appetite, poor sleep, poor concentration, tearful, anxiety, agoraphobia. (Tr. 507-564). The treatment notes also show that Plaintiff's medications were often changed in an effort to be more effective. There is no indication from the ALJ's decision that she properly considered these notes. Notably, when mental illness is the basis of a disability claim, clinical and laboratory data may consist of the diagnosis and observations of professionals trained in the field of psychopathology. The report of a psychiatrist should not be rejected simply because of the relative imprecision of the psychiatric methodology or the absence of substantial documentation, unless there are other reasons to question the diagnostic techniques. *Blankenship v. Bowen*, 874 F.2d 1116, 1121 (6th Cir.1989).

Furthermore, Dr. Gray's findings are also supported by the finding of Dr. Spadafora and Dr. Schmidtgoessling. Notably, both psychologists determined that Plaintiff's ability to withstand stress and pressures associated with day-to-day activities was markedly impaired due to a panic disorder, panic attacks, and posttraumatic stress disorder. Dr. Schmidtgoessling also found that Plaintiff is markedly impaired in her ability to relate to others, including coworkers and supervisors. As detailed above, a treating source opinion

---

[1] Objective medical evidence consists of medical signs and laboratory findings as defined in 20 C.F.R. § 404.1528(b) and (c). *See* 20 C.F.R. § 404.1512(b)(1). "Signs" are defined as "anatomical, physiological, or psychological abnormalities which can be observed, apart from your statements (symptoms). Signs must be shown by medically acceptable clinical diagnostic techniques. Psychiatric signs are medically demonstrable phenomena that indicate specific psychological abnormalities, e.g., abnormalities of behavior, mood, thought, memory, orientation, development, or perception. They must also be shown by observable facts that can be medically described and evaluated." 20 C.F.R. § 404.1528(b).

is entitled to controlling weight if the treating source opinion is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques' and is 'not inconsistent with the other substantial evidence in [the] case record.' " *Blakley*, 581 F at 406. Here, contrary to the ALJ's findings, Dr. Grays findings were supported by the treatment notes from Central Clinic and were also consistent with the findings of Dr. Spadafora and Dr. Schmidtgoessling.

Last, it is clearly established law that the opinion of a non-treating "one-shot" consultative physician or of a medical advisor cannot constitute substantial evidence to overcome the properly supported opinion of a physician who has treated a claimant over a period of years. *See Lashley v. Secretary of Health and Human Services*, 708 F.2d 1048, 1054 (6th Cir. 1983). As detailed above, Dr. Gray treated Plaintiff since 2009 and her findings were properly supported. Thus, the ALJ's reliance on the opinions of the non-examining state agency psychologists does not comport with agency regulations and controlling law. Specifically, the reasons given by the ALJ for the weight assigned to Dr. Gray are not supported by the record; and therefore, fail to meet the requirement that the ALJ "give good reasons" for not giving weight to a treating physician. *See Wilson*, 378 F.3d at 545.

### 3. ALJ's consideration of Plaintiff's Credibility

Plaintiff's next assignment of error asserts that the ALJ improperly assessed Plaintiff's credibility. SSR 96-7p provides in part:

> The reasons for the credibility finding must be grounded in the evidence and articulated in the determination or decision. It is not sufficient to make a conclusory statement that 'the individual's allegations have been considered' or that 'the allegations are (or are not) credible.' It is also not enough for the adjudicator simply to recite the factors that are described in the regulations

12

> for evaluating symptoms. The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight.

SSR 96-7p.

The ALJ's credibility decision must also include consideration of the following factors: 1) the individual's daily activities; 2) the location, duration, frequency, and intensity of the individual's pain or other symptoms; 3) factors that precipitate and aggravate the symptoms; 4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; 5) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; 6) any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and 7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms. See 20 C.F.R. §§ 404.1529(c) and 416.929(c); SSR 96-7p.

Here, the ALJ determined that Plaintiff's subjective complaints of disability were not credible because such complaints were inconsistent with her daily activities. Namely, despite Plaintiff's complaints of disabling mental impairments, the ALJ noted that Plaintiff cared for her children, went to church a few times a month, went to school conferences and performs some household chores. However, in making this finding, the ALJ erred by selectively relying on Plaintiff's testimony regarding her daily activities. *See Kelley v. Callahan*, 133 F.3d 583, 589 (8th Cir.1998) ("[A] person's ability to engage in personal

13

activities such as cooking, cleaning, and hobbies does not constitute substantial evidence that he or she has the functional capacity to engage in substantial gainful activity."). It is well recognized that a claimant's ability to perform limited and sporadic tasks does not mean that she is capable of full-time employment. *See Carradine v. Barnhart*, 360 F.3d 751, 755 (7th Cir. 2004); *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001). Thus, Plaintiff's ability to engage in such daily activities does not establish *ipso facto* that she is able to engage in gainful activity 40 hours per week. Furthermore, there is no indication that the ALJ considered Plaintiff's prescription history, which includes Ability, Clonazepam, Wellbutrin, Lithium, Depakote, Seroquael and Xanax. In addition, Plaintiff testified at the hearing that she goes to treatment 3 days a week, which includes, group therapy, one on one therapy, and medication therapy with a psychiatrist. (Tr. 52).

Moreover, in finding that Plaintiff's complaints of disabling mental impairment were not credible the ALJ cited to the fact that Plaintiff's "mental/emotions impairments were not so severe that it cause her to seek inpatient care for her condition." However, there is no indication from the opinion evidence, agency regulations or controlling law, that one must obtain inpatient mental health treatment in order to be disabled as defined by the regulations. While an ALJ is free to resolve issues of credibility as to lay testimony, or to choose between properly submitted medical opinions, he is not permitted to make her own evaluations of the medical findings. *Mason v. Comm' r of Soc. Sec.*, No. 1:07–cv–51, 2008 WL 1733181, at *13 (S.D. Ohio April 14, 2008) (Beckwith, J.; Hogan, M.J.) (citing *Hall v. Celebrezze*, 314 F.2d 686, 690 (6th Cir. 1963). Thus, it appears in making this determination, the ALJ, in part, impermissibly acted as her own medical expert. See *Rousey v. Heckler,* 771 F.2d 1065, 1069 (7th Cir.1985); *Kent v. Schweiker*, 710 F.2d 110,

14

115 (3d Cir.1983); *Lund v. Weinberger*, 520 F.2d 782, 785 (8th Cir.1975).

In light of the foregoing, because the ALJ must reconsider the opinion evidence of record, it is also necessary for Plaintiff's credibility determination to be considered on remand. The impairments that the ALJ found credible were included in her RFC determination, but the picture may change after the opinion evidence is reevaluated on remand, making it appropriate to also keep this question open. The same analysis holds true for Plaintiff's third assignment of error relating to the vocational errors made by the ALJ. Because the ALJ's reevaluation of the opinion evidence may change the ALJ's RFC analysis, the hypothetical questions to the vocational expert may also need to be revised accordingly.

### III. Conclusion and Recommendation

This matter should be remanded pursuant to Sentence Four of § 405(g) for further proceedings consistent with this Report and Recommendation. A sentence four remand under 42 U.S.C. §405(g) provides the required relief in cases where there is insufficient evidence in the record to support the Commissioner's conclusions and further fact-finding is necessary. *See Faucher v. Secretary of Health and Human Servs.,* 17 F.3d 171, 174 (6th Cir. 1994) (citations omitted). In a sentence four remand, the Court makes a final judgment on the Commissioner's decision and "may order the Secretary to consider additional evidence on remand to remedy a defect in the original proceedings, a defect which caused the Secretary's misapplication of the regulations in the first place." *Faucher,* 17 F.3d at 175. All essential factual issues have not been resolved in this matter, nor does the current record adequately establish Plaintiff's entitlement to benefits as of her alleged onset date. *Faucher*, 17 F.3d at 176.

For the reasons explained herein, **IT IS RECOMMENDED THAT**: the decision of the Commissioner to deny Plaintiff DIB benefits be **REVERSED** and this matter be **REMANDED** under sentence four of 42 U.S.C. §405(g) consistent with this Report and Recommendation.  As no further matters remain pending for the Court's review, this case be **CLOSED.**

      *s/Stephanie K. Bowman*
Stephanie K. Bowman
United States Magistrate Judge

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

SABRINA PARR

    Plaintiff,

vs.

CAROLYN W. COLVIN, acting
COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

Case No. 1:13-cv-31

Barrett, J.
Bowman, M.J.

## NOTICE

Pursuant to Fed. R. Civ. P 72(b), any party may serve and file specific, written objections to this Report and Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R. That period may be extended further by the Court on timely motion by either side for an extension of time. All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections. A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).